UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LILLIAN WONG,

                Plaintiff,        **REPORT & RECOMMENDATION**

  -against-                                05-CV-4524 (NGG)(RER)

MARRIOTT HOTEL SERVICES, INC.,

                Defendant.
-------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Lillian Wong ("Wong") brought this action against Marriott Hotel Services, Inc. ("Marriott") for injuries she sustained when she fell in her darkened hotel bathroom at the Kauai Marriott Hotel during a scheduled power outage. (*See* Docket Entry 24, Ex. 1 at 32-33.) Wong alleges that Marriott negligently failed to take steps to eliminate an unreasonable risk and failed to put Wong on sufficient notice of the gravity and severity of the hazard presented by the electrical outage to enable her, in the exercise ordinary care, to avoid injury. (*See* Docket Entry 27, Mem. in Opp'n to Def.'s Mot. for Summ. J. at 5.) Marriott has moved for summary judgment, arguing that by providing written notice of the power outage, as well as glow sticks for illumination, it had satisfied its duty as a landowner and innkeeper. (*See* Docket Entry 24, Aff. of William G. Scher at 4.) For the reasons set forth below, I respectfully recommend that Marriott's motion for summary judgment be denied.

BACKGROUND

Wong was married on August 18, 2004 and arrived with her husband at the Kauai Marriott on August 19, 2004. (*See* Docket Entry 25, Ex. 1, Def's Local Rule 56.1 Statement "56.1 Stmt." ¶ 2.) Wong was assigned to a room in the Haupu tower. (*Id.* at ¶ 3.) In order to facilitate work

being performed at an adjacent resort at Kauai Lagoons, the electricity in the Haupu tower was scheduled to be shut off on August 24, 2004 from 12 midnight until 4 a.m.[1] (*Id*. ¶ 4.) Two days before the scheduled outage, the hotel's housekeeping department delivered letters to each of the rooms in the Haupu tower, including Wong's, advising that the electrical power would be shut off and that glow sticks would be placed in their rooms. (*Id.* ¶¶ 5-6.) Other guests who arrived on the day of the scheduled outage were provided with oral warnings that it would occur. (Docket Entry 24, Ex. 7, Pedroni Dep. Tr. at 52.)

A bag containing two glow sticks and some towels were placed outside Wong's room prior to the accident. (*Id*. ¶ 11; Docket Entry 26, Pl.'s 56.1 Stmt. ¶ 11.) Wong conceded that she read the letter prior to the accident, and that she received the bag in which the glow sticks were placed but did not open the bag until after the accident. (Docket Entry 25, Def.'s 56.1 Stmt. ¶¶ 11-12; Docket Entry 26, Pl.'s 56.1 Stmt. at ¶¶10-12.)[2]

On August 24, 2004, Wong and her husband returned to their hotel room after a day of sightseeing. (Docket Entry 24, Ex. 5, Wong Dep. at 22.) Just prior to midnight, Wong was in bed watching television. (*Id.* at 24.) She then went to use the bathroom, and was in the process of completing her use of the toilet when the lights suddenly went out. (*Id*. at 28-29.) Trying to find her way in the dark, she stumbled and fell, striking her face and jaw on the bathroom sink. (*Id.* at 30-31.) Wong, after locating the phone in the darkened room, called the front desk and requested

---

[1] The decision to shut off the power was made approximately within the week that it was shut off. (See Docket Entry 25, 56.1 Stmt, ¶ 4.)

[2] Wong says she found a closed, opaque bag of guest towels left outside of her hotel room on the day prior to the occurrence, which her husband took into the room and did not open until after Wong's injury. (*Id.* ¶ 11.)

that hotel staff drive her to the hospital, which they agreed to do after initially refusing. (*Id*. at 33-35.) Wong states that the fall caused her to fracture her jaw, dislocate her teeth, injure her neck and shoulder, and to ultimately trigger Lupus and Sjogren's Syndrome. (See Docket Entry 26, Pl.'s 56.1 Stmt. ¶ 34).

Generally, the facts leading up to Wong's accident are not disputed, but Wong and Marriott disagree as to whether Marriott took reasonable steps to warn Wong about the dangers of the power outage. Wong argues that Marriott's warning about the power outage was insufficient to put Wong on notice of the hazard presented by the power outage. (*See* Docket Entry 26, Pl.'s Mem. of Law in Opp'n to Marriott's Mot. for Summ. J. at 5.) Marriott contends that it discharged its duty to protect Wong from the alleged unreasonable risk of harm by providing her with written notice of the outage and with glow sticks two days before the outage occurred. (See Docket Entry 25, Def.'s Mem. of Law in Supp. of Its Motion for Summ. J. at 7.)

## DISCUSSION

I. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact, and the undisputed facts establish that the moving party is entitled to judgment as a matter of law. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998); *see also* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that would affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (citations

and internal quotations omitted). The burden falls on the moving party to establish that no relevant facts are in dispute, and that there is no controversy regarding the inferences to be drawn from them. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir.1981); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). The movant's burden is satisfied by identifying relevant evidence on record such as pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *Celotex*, 477 U.S. at 323. In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party. *Parks Real Estate,* 472 F.3d at 41 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). However, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

II. Analysis

A. Applicable Law

Although the parties disagree as to the choice of law analysis that should be used to determine the applicable law, they both agree that Hawaiian law governs this case. The issue is largely irrelevant, however, as the tort laws of Hawaii and New York do not conflict in any meaningful sense.[3]

---

[3] Federal courts sitting in diversity must apply the law of the forum state to determine the choice of law. *Fieger v. Pitney Bowes Credit Corp*., 251 F.3d 386, 393 (2d Cir. 2001) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497 (1941)). Under New York's choice of law rules, the court first considers whether a choice of law analysis is necessary due to an actual conflict of laws. *HSA Residential Mortgage Servs. of Texas v. Casuccio*, 350 F. Supp. 2d 352, 362 (E.D.N.Y. 2003) (citing *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 613 N.E.2d 936 (N.Y. 1993). Only when the applicable laws at issue provide different substantive

4

Under both New York law and Hawaiian law, innkeepers have a longstanding duty to exercise reasonable care for their guests' safety because of the special relationship between the parties. *See Knodle v. Waikiki Gateway Hotel, Inc.*, 69 Haw. 376, 386 (Haw. 1987) ("When the relation is a special one of innkeeper and guest, the former is under a duty to take reasonable action to protect the latter against unreasonable risk of physical harm.") (citing RESTATEMENT (SECOND) OF TORTS § 314A (1965)); *Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 246, 451 N.E.2d 195, 199 (N.Y. 1983) (noting that the duty to warn of dangers is imposed upon innkeepers because of the special responsibilities that they bear) (citations omitted); *DiSalvo v. Armae, Inc.*, 41 N.Y.2d 80, 82, 359 N.E.2d 391, 392 (N.Y. 1976) (holding that, where plaintiff and her family were paying guests at defendant's resort, a "a very high level of duty" was owed to plaintiff) (citing RESTATEMENT (SECOND) OF TORTS § 314A (1965)) (other citations omitted). Under both Hawaiian and New York law, landowners have a duty to take reasonable measures to maintain their property in a safe condition, and if the landowners are unable to do so, to warn guests of any known dangers. *See Knodle*, 69 Haw. at 386-87; *Gump v. Walmart Stores*, *Inc.*, 93 Haw. 428, 436 (Haw. Ct. App. 1999); *Basso v. Miller*, 40 N.Y.2d 233, 245, 352 N.E.2d 868, 875 (N.Y. 1976); *Novikova v. Greenbriar Owners Corp.*, 258 A.D.2d 149, 151, 694 N.Y.S.2d 445, 446 (2d Dept. 1999) (citations omitted). Both Hawaiian and New York courts have therefore imposed liability on hotelkeepers in a variety of negligence contexts. *See Darby v. Compagnie*

---

rules must a conflict of laws analysis be done. *Id*. (citing *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 14 (2d Cir. 1996); *Bader v. Purdom*, 841 F.2d 38, 39-40 (2d Cir. 1988)); *see also Portanova v. Trump Taj Mahal Assocs.*, 270 A.D.2d 757, 759-60, 704 N.Y.S.2d 380, 383 (3d Dept. 2000) (holding that, where personal injury occurred at hotel in New Jersey, the court need not engage in choice of law analysis because the legal principles of New York and New Jersey are not in conflict). Here, since the substantive law of Hawaii and New York do not conflict in any meaningful sense, a choice of law analysis unnecessary.

*National Air France*, 96 N.Y.2d 343, 348, 753 N.E.2d 160, 162 (N.Y. 2001) (collecting cases where New York Court of Appeals imposed or upheld liability on hotelkeepers for breach of the duty of care); *Bidar v. Amfac, Inc.*, 66 Haw. 547, 552-54, 669 P.2d 154, 159-60 (Haw. 1983) (holding that summary judgment was inappropriate where hotel owed a duty of care to guest and it was foreseeable that guest would grab towel bar in bathroom for support).

B.  Summary Judgment Is Inappropriate

The parties agree that the salient issues in this case are whether or not Marriott took reasonable steps to either eliminate the risk of harm to Wong or adequately warn her of the hazards presented by the power outage.

Taking the second issue first, Marriott argues that the letter it delivered to Wong's room warning of the upcoming power outage was sufficient as a matter of law to fulfill its duty to warn Wong of the hazards, especially given the fact that Wong had read the letter. (*See* Docket Entry 25 at 7.) It also argues that the placement of glow sticks in a bag outside Wong's room constituted sufficient means for Wong to protect herself from the hazard of being in an unlighted hotel room. (*See* Docket Entry 29 at 1.)

Wong counters by arguing that, in the first place, Marriott failed in its duty to eliminate the risk of harm by placing guests in rooms which would be without light for several hours during the night. (*See* Docket Entry 27, Pl.'s Mot. for Summ. J. at 9.) Wong suggests that several safer alternatives were available, pointing out that Marriott could have housed the guests elsewhere in the hotel or scheduled the blackout during the daytime. (*Id*. at 10.)

Further, given the decision to place guests in rooms which would temporarily be darkened during the night, Wong argues that Marriott's warning to her was insufficient. (*Id.* at 13.) Wong

6

claims Marriott should have provided her with an additional verbal warning, as it did for other guests who checked in after Wong. (*See id.* at 12.) Wong contends that Marriott could have taken additional measures to ensure that it had provided Wong adequate warning, such as making courtesy calls to her room, leaving an additional note on her door or posting a clearly visible sign on the hotel's premises. (*Id.* at 13.) Wong also claims that Marriott failed to provide Wong with a means of avoiding the danger because it failed to properly deliver the glow sticks to her room, but instead left them outside her door in a "closed, opaque bag of guest towels." (*Id.* at 10.) Wong contends that Marriott should have left the glow sticks in a more conspicuous place inside the room, or provided other sources of light such as a flashlight or lamp. (*Id*. at 13.)

Marriott defends its decision and asserts that the alternative measures suggested by Wong with respect to housing guests or scheduling the outage at another time would have presented other problems in managing the hotel. (*See* Docket Entry 29, Def.'s Reply Mem. of Law at 2.) Marriott also points out that Wong may not have found the glow sticks even if they had been placed inside the room, and notes that its obligation was not to be an insurer against all accidents that occur on its premises. (*Id*. at 2.)

What the parties' respective arguments make clear is that summary judgment is inappropriate. Although most of the material facts are not in dispute, *e.g.*, whether Wong received and read the notice of the power outage, the circumstances surrounding her injury, those facts do not establish that Marriott is entitled to judgment as a matter of law. Marriott was under a duty to protect and/or to warn Wong of the danger created by the power outage. *See* RESTATEMENT (SECOND) OF TORTS § 314A illus. 3 (1965). This case, however, turns on whether or not Marriott took *reasonable* steps to either eliminate the risk of harm to Wong or to adequately warn her of

7

the hazards presented by the power outage. Reasonableness of a landowner's actions and the adequacy of warnings are quintessentially questions of fact for a jury to decide. *See generally King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) ("[S]ummary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury.") (citations omitted); *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Haw. 494, 503 (Haw. 1994) ("[T]he question whether one has acted reasonably under the circumstances is for the trier of fact to determine.") (citations omitted); *Bidar v. Amfac, Inc.*, 66 Haw. at 552 (holding that whether the duty of reasonable care was breached is ordinarily a question for trier of fact to determine); *Farrior v. Payton*, 57 Haw. 620, 631-632 (Haw. 1977) ("[T]he exercise of reasonable care requir[es] . . . a jury's examination of all of the circumstances leading up to the injury.")); *Havas v. Victory Paper Stock Co., Inc.*, 49 N.Y.2d 381, 388, 402 N.E.2d 1136, 1139 (N.Y. 1980) ("[I]n the determination of issues revolving about the reasonableness of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process.") (citations omitted). *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 63-65, 427 N.Y.S.2d 1009, 1014-15 (4th Dept. 1980) ("The generally accepted rule . . . is that the reasonableness *vel non* of a set of warnings is a question of fact for the jury.") (citations omitted).

Wong has identified several reasonable steps Marriott could have taken to either eliminate the risk of harm to her or to adequately warn her of the hazards presented by the power outage. Although Marriott attempts to eschew those steps as unnecessary and unreasonable, it has not put forth sufficient undisputed evidence on the reasonableness of its actions or the unreasonableness of those suggested by Wong from which I could, in good conscience, say that it acted reasonably

8

as a matter of law. My conclusion is further buttressed by the fact that all reasonable inferences that can be drawn from the undisputed facts must be drawn in Wong's favor. *Donahue*, 834 F.2d at 57 (when a "controversy regarding the inferences to be drawn from [the facts]," is present, summary judgment is not appropriate). Surely, there are some cases in which these questions can be decided by a judge as a matter of law. This, however, is not one of those cases.

Because the issues before the Court – whether or not Marriott took reasonable steps to either eliminate the risk of harm or adequately warn Wong of the hazards presented by the power outage – are for a trier of fact, and the reasonable inferences that can be drawn from the undisputed facts vary widely, Marriott's motion for summary judgement should be denied.

## RECOMMENDATION

For the foregoing reasons, I respectfully recommend that Marriott's motion for summary judgment be denied. Any objections to this Report and Recommendation must be filed with Clerk of the Court and the Honorable Nicholas G. Garaufis within ten business days of receiving this Report and Recommendation. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated: December 18, 2007**
  **Brooklyn, New York**

             *Ramon E. Reyes, Jr.*
             **Ramon E. Reyes, Jr.**
             **United States Magistrate Judge**